with equal force to you. We really appreciate your willingness to accept the assignment. Yes, your honor. Thank you. May it please the court. Mr Risley. Yes. Proceed. Uh, again, my name is Brian Risley and I represent Scott Olsen in this case. Uh, the real simple issue before the court on this case is whether or not 23 05 Virginia was the primary residents of Mr Olsen or that he represented that, uh, to the tune that he should have been convicted in this case. It is our position that he never made that contention, uh, to FEMA or to any other investigators such that he should have been convicted of that offense. Um, and the fact that they developed in this case, uh, would show that he made certain representations that certainly could be deemed inappropriate, misleading, um, sneaky, uh, shrewd, um, and guileless. But, um, those were all get an effort to perhaps gain some monetary advantage from FEMA. But we know in the outset that he did not, uh, demonstrate or represent or state that 23 05 was his because the first application he filled out, which is on page five of our addendum. Uh, question eight. Uh, actually, I'm sorry. It's question question eight. Ask the address and then question 12 state. Is this your primary residence? And he puts no. And actually, in quotation marks, it says secondary address. And so that was the beginning of the fact this case. Uh, and then some follow up questions by FEMA, some representations, uh, that he made requiring an inspector to come to Joplin to meet with Mr Olson at the site where this house was no longer there. This was during the tornado of 2011 that wiped out a lot of Joplin. But that inspector point blankly testified at trial and made notes asking Mr Olson. This your primary residence? He goes, No, my I live. My mailing address is on Park Street. I believe that's where my primary address residence is. I just lost some and, um, and that's what I'm here seeking relief for. And there was some follow up things. And I know the government's gonna argue that all of these were representations to try and convince FEMA and investigators that 23 oh five was his primary residence, and he may or should be responsible for those statements. But those statements don't lead us to the point that 23 oh five Virginia was his primary residence. And that's the only thing he was charged with. In this case, um, there is case law that was cited in my brief, and I think it's very important on this specific issue because of the four cases I cited specifically talk about, um, statements that defendants in that case made and pointings out of the 6th, 5th and 8th circuits basically stating Yes, it appears the defendant was trying to be sneaky or shrewd. And, uh, Hickson goes so far to say that it was clear the defendant intended to make and indeed made a false statement to the government. However, he was not indicted for the false statement he made, but for a statement which could have been false if the government adequately established the identity between the defendant and his corporation. That case, uh, involved a defendant who basically said he was self employed when, in fact, he was employed by his own corporation. Um, and I don't really remember the um, the court in that case essentially stated Yes, he made a statement was false, but he was actually employed by his corporation. Therefore, that's not actually a false statement, and the government didn't meet its burden. Well, now, when we talk about working for a corporation, was it something that's international? Or is it his name? And he used this for probably liability purpose? I again, I don't have the case right in front of me, but I believe it was essentially just the business he had for liability purposes where it was a he was in some kind of service industry business deal with the I'm Scott or I'm Scott Inc. And when the court basically said that he was attempting to be misleading and making that statement, but the factual distinction was that he technically was not self employed because he was employed by his own corporation. And so the court in Hickson said, essentially, we think you're trying to be sneaky, and we think you made a false statement, but you did not make the false statement that you were self employed because technically you are not. And just in this case, again, we know Mr Olson did not state in documents or to an inspector that 2305 Virginia was his primary residence because, in fact, he stated the opposite. He stated it was not my primary residence. I have another house. It's my mail and address, and I completed a form in which I stayed. It was not my primary residence. Now, the other things he did, such as saying I had property that I put it 23 or five Virginia like his video equipment, things of that nature, and I lost that, and I would like to have money back for that due to FEMA benefits. You know, if the government had charged him with falsely claiming he lost property when they shown he didn't, you know, we may not be here because that's a different question. And I certainly think the jury could have drawn from the facts of the case that that may have happened. But what certainly didn't happen is that 2305 Virginia was not his primary residence because of the state's here. The other cases quickly I cited the one of the A circuit was the safe, and it involved a defendant who state he owns some property in joint tenancy with his mother for some reason. But it turns out his mother was actually dead. And because she was dead, it was legally impossible for him to own it own it in joint tenancy. Therefore, even though he was probably trying to and I think the term that the court used was shrewdly calculated to evade. They basically said that any special problems arising from the little literally true but unresponsive answer are to be remedied through the jury prosecution. And what the government did in this case essentially was take some what they call representations that Mr Olson made about certain things to lead that basically say he was trying to represent 2305 Virginia to be his primary residence. But he the only two times when he was specifically asked, either in a form or from an inspector directly to his face is 2305 Virginia. Your primary residence, he said. No. Briefly, the other two cases. U. S. B. Moses in the Fifth Circuit basically said a lack of candor does not equal conviction. And, uh, hogging out of the Sixth Circuit lists the five factors, and it's essentially the making of the statement and four other factors. I don't think he even made the statement to get us past the first element. And unless the court has questions, I'll reserve the rest of my time for the government. Good morning, and may it please the court. My name is Stephen Mulhenry, and I appear on behalf of the United States in this case. This appeal fails because Mr Olson is not entitled to his own facts. Mr Risley's argument to the court is virtually the same argument that he presented to the trial jury in this case, and that was a legitimate argument for the trial jury that Mr Olson didn't make the specific false statement that the government charged him with. However, after hearing all of the evidence in the case, the jury found that even though Mr Olson initially filed his FEMA application for stored property, he ultimately attempted to fraudulently represent to FEMA that that was his primary residence because he had moved into it the day before the Joplin tornado. Now, the difference between this hearing here today and the trial is that the defendant is asking this court to accept those facts as being true. On page 17 of the appellant's brief, he states, At best, taking the evidence in the light most favorable to the government, the evidence shows that the defendant submitted some documents that were not factually correct in a storm. However, those are the facts in the light most favorable to the defendant. What the evidence actually established is that Mr Olson found out that he could file a claim to FEMA, that he could get reimbursement for property, that he could only get reimbursement for property if that property was in his primary residence. He didn't find this out until after he filed his initial claim as stored property. Then he found out that FEMA can consider his place that he hadn't lived for more than six months out of the year to be his primary residence if he had just moved in. Hence, Mr Olson attempted to convince FEMA that he had just moved into the property. And how did he do... Is there a... Counsel has pointed to a couple of documents in which the appellant answers no to the question about primary residence. That's correct, Your Honor. All right. Now, do you have any... Does the government have any writing executed or adopted by Mr... By this appellant in which he states that this property was his primary residence? He stated that it was to clear up his residency status. And the government submits... So what's the answer to the question? The answer is no. He did not... And the government admitted this and stated it very clearly at trial. This is not a false statement case. This is a disaster fraud case. The offense of conviction was 1040... 18 U.S.C. 1040 and 18 U.S.C. 1001. The way this case was charged is that the defendant made false statements or representations that 2305 Virginia was his primary residence. Now, if I could call the court's attention... But you don't... But you don't have any... You don't have any explicit statements or representations by this appellant that this was his primary residence. The government submits that there is an affirmative representation. And that is at page A42 of the government's appendix. This is... This is a document which the appellant submitted to FEMA. This document purports to be a letter from a non-existent landlord named Mr. Ritchie. And Mr. Ritchie... This is actually Scott Olson who wrote this. It's not, you know, Ritchie as the... Dean Ritchie as the government established at trial and, you know, the jury found. But it says, to whom it may concern, my name is Dean Ritchie and for the past several years I've worked for numerous homeowners, property management companies, and apartment complexes around the Joplin, Galena, and Baxter Springs area. I do maintenance, repair, security, and collection and leasing. I have recently relocated to the Baxter Springs area of Kansas. One of the properties I maintained was located at 2305 South Virginia Avenue in Joplin, Missouri. On the 20th of May last, I signed a lease agreement with a Mr. Scott B Olson for the amount of $370 per month with a negotiated deposit of $300. This is a reduced amount based on the cleaning and painting of two rooms that Mr. Olson agreed to undertake. The monies were received by me and the 20th and the keys were given to Mr. Olson. The lease was to be for only one year and occupancy prior to the 1st of June was authorized as long as the utilities were transferred into Mr. Olson's name no later than May 31st. I returned to the property on the 21st, Saturday, to check on the progress of the painting and witnessed Mr. Olson moving his personal property into the residence. The residence was subsequently destroyed on Sunday the 22nd of May 2011 by the F5 tornado that struck Joplin. I hope this clarifies Mr. Olson's residency status and the arrangements surrounding the rental. Respectfully, Dean Ritchie. Now Dean Ritchie did not exist. Mr. Olson submitted this letter to make a representation as he admits in letter tend to show that this was his primary residence. Because as Miss Connie Malone testified at trial on page 62 of the transcript, FEMA cannot pay out funds unless it's for a primary residence. She testified that FEMA considers a damaged dwelling to be a primary residence if the applicant can prove that they had moved in prior to the event, the tornado. So in other words, Mr. Olson found out that his primary residence, if he could prove that he moved in, FEMA would consider that his primary residence. He represented it to be his primary residence. I just don't see anything in the letter that has anything to do with whether it's a primary or secondary residence. Can't a person have more than one residence in the eyes of FEMA? Yes, Your Honor, but the whole purpose that Mr. Olson was filing the government and there was only one way. So if a person files an application with FEMA and it doesn't qualify and in discussions with FEMA, FEMA advises well you don't qualify because this damaged property is not your primary residence, then that person is guilty of an indictable offense. As I hear the government explain it. No, Your Honor. I hear some theory that this is some kind of like an implied misrepresentation. Well, Your Honor, it's more than implied. It is expressed because once he found out that it had to be his primary residence, as the jury found, he submitted those documents attempting to establish that. If I could briefly address, because I notice I'm running out of time, the case law that the defendant cites. And the four cases involved, all of them involved basic yes or no answers in either on either forms or depositions. And that's what Mr. Risley wants to make this case about. You know, simple yes or no answers. And the government stated up front at the beginning that Mr. Olson initially, his application was certainly false in that he didn't lose property, but he initially claimed to have lost the property from something he described as a secondary residence. It was stored business property. He tried to change that later on. Now, you know, Gagin involved the 74 Jaguar that he had, the defendant in that case, had actually transferred title to his girlfriend. So as a technical legal matter, the statement that he made that he did not own the Jaguar was true. Here, the statement that Mr. Olson made that he had moved into the property was false. The documents that he provided indicating that he had moved into the property were all false and fraudulent. Now, the next case, Visa, was the joint stock ownership with the deceased mother. Again, the defendant in that case stated that he didn't own any any stock jointly with his deceased mother. And as a technical matter, that was correct because you can't own stock with a and that was was not asked in that case to the best to the best of my reading. Hickson, which your Honor inquired about, was a Tennessee Valley Authority disability case. And in that case, the defendant checked no to the block that he self-employed, where there was evidence that he had been receiving money from projects that he was working on. You know, basically self-employment. But he had a company. He was technically an employee under of the company. And so under state law, he was not self-employed. And so again, it was technically correct. In Moses, and this is an interesting one because there were two counts, and Mr. Risley does not discuss count three, on which the defendant Moses was found guilty, which is more similar to the charge in the instant case. And that finding was upheld by the by the circuit court. And it's more similar to the instant case than count four, which was dismissed. And count three was where the defendant had said that he was not continuously married with his wife, didn't continuously live with her for the whole period. Whereas count four, which was ultimately, you know, was found that the conviction was improper. The defendant had made the representation, if I notice I've run out of time, can I finish my statement? Yes, you may. The defendant had made the statement that he had not separated from his wife since the filing of his petition, which was technically true. Here, the statements and especially the representations the defendant were making, was making to FEMA, were clearly fraudulent. Thank you. Very well. May it please the court, to address a couple of the arguments Mr. Mulhenry made. It's not our position that the, that we're trying to change the facts. It's our position that the facts of this case don't lead to a legal standing where this case should have even been submitted to the jury. Clearly, this case does not have jury appeal from the defendant's standpoint, because lots of the things that he did in here would be considered shrewd or sneaky. But again, he didn't make the statement or, and we don't even think he really made the representation that 2305 was his primary residence. He made several representations that he lost property and he wanted FEMA to provide him money for it, but and the talking about FEMA can consider. There are lots of, and I know that the facts, they're drawing a lot of assumptions to the letter. He talked about a 42. There's certainly an argument that can be made that my client wrote it and that Mr Richie doesn't exist. But there's actually no proof that my client wrote it or that Mr Richie does not exist. There just wasn't any shown in court. My client did not admit that he wrote the letter. He admitted that it had some errors in it based on what the evidence was. But as the court noted, uh, that letter doesn't state that this is his primary residence. Uh, the and it was interesting that Miss Malone testified a trial that says, well, FEMA can consider it is his primary residence if there are certain factors that come up. But the CFR, which I believe is on page two of our agenda, defines primary residence as the dwelling where the applicant normally lives during the major portion of the calendar year or the dwelling that is required because of proximity to employment, including agriculture activities that provide 50% of the household's income. There is no provision or definition that says that FEMA can decide that based on factors they can grant primary residence to somebody who hasn't even lived a day, uh, in the residence because that was certainly, um, not disputed. Um, I mean, again, as a whole, if the government had charged, uh, Mr Olson with something else, such as making representation that he lost property or something else to that effect, then we would have a different argument. But the case law that was cited specifically Hickson in the states kind of make it clear that if they don't charge it the right way, then the conviction shouldn't stand, regardless of whether or not the defendant was trying to be sneaky. And, um, I would just ask you to review what we've presented and the case law and come back with the finding that the garden in this case and overturned the conviction. Thank you. I'm sure you will review the record. Whether the result is to your liking is another your class. Thank you. Understand. Thank you. We thank you for your arguments and your briefs. The case is submitted. We'll take it under consideration. Does that complete our calendar? Miss Sharples? Yes, it does. Very well. The court will be in recess subject to call.